**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
T: (415) 563-8583
F: (415) 223-9717
e-mail: ss@sanjayschmidtlaw.com

**T. Kennedy Helm, IV (SBN 282319)**
**HELM LAW OFFICE, PC**
644 40th Street, Suite 305
Oakland, CA 94609
T: (510) 350-7571
F: (510) 350-7359
kennedy@helmlawoffice.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| SHERRI REYNOLDS, individually, and LYNN SEGEBART, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF MADERA, a public entity; DOES 1-25, jointly and severally; WELLPATH, LLC; Nominal Defendant JENNIFER LORIN JOHNSON, individually and as purported successor in interest to Decedent TRAVIS SEGEBART; and, DOES 26-50, jointly and severally, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** <br><br> 1. 42 U.S.C. § 1983 – Civil Rights Violations <br> 2. 42 U.S.C. § 1983 – *Monell* and Supervisory Liability <br> 3. California Civil Code § 52.1 (b) – State Civil Rights Violations <br> 4. Negligence |

Plaintiffs, by and through their attorneys, the LAW OFFICE OF SANJAY S. SCHMIDT and HELM LAW OFFICE, PC, for their Complaint against Defendants, state as follows:

## JURISDICTION

1. This is a civil rights, wrongful death, and survival action arising from the in-custody,

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                                  1

suicide death of TRAVIS SEGEBART, on or about February 25, 2022, in the City of Madera, County of Madera, California.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this action is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California.

3. Plaintiffs and Nominal Defendant further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law.

## INTRADISTRICT ASSIGNMENT TO FRESNO DIVISION

4. A substantial part of the events and/or omissions complained of herein occurred in the City of Madera, County of Madera, California, and, pursuant to Eastern District Civil Local Rule 120(d), this action is properly assigned to the Fresno Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

1. Plaintiff SHERRI REYNOLDS is the mother of Decedent TRAVIS SEGEBART, and she is a resident of the State of California. Plaintiff SHERRI REYNOLDS brings these claims individually for violations of her personal rights for wrongful death and as a purported co-successor in interest to her son, TRAVIS SEGEBART, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights law, asserting survival claims for TRAVIS SEGEBART, under both state and federal law.

2. Plaintiff LYNN SEGEBART is the father of Decedent TRAVIS SEGEBART, and he is a resident of the State of California. Plaintiff LYNN SEGEBART brings these claims individually for violations of his personal rights for wrongful death and as a purported co-successor in interest to his son, TRAVIS SEGEBART, pursuant to California Code of Civil Procedure § 377.11 and

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    2

federal civil rights law, asserting survival claims for TRAVIS SEGEBART, under both state and federal law.

3. The individual named herein as a Nominal Defendant, JENNIFER LORIN JOHNSON, is named as such, pursuant to California Code of Civil Procedure Section 382. The claims asserted, however, are no different than the claims that would be asserted if this individual were named herein as a Plaintiff.

4. Nominal Defendant JENNIFER LORIN JOHNSON, on information and belief, was at all times herein mentioned the purported, surviving spouse of Decedent TRAVIS SEGEBART, and a resident of the State of California. Nominal Defendant JENNIFER LORIN JOHNSON is included herein on the basis that she may have the right to bring these claims individually for wrongful death and violation of her personal rights, and as a purported successor in interest for her deceased spouse, Decedent TRAVIS SEGEBART, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for TRAVIS SEGEBART, under both state and federal law.[1]

5. The claims in this Complaint are brought pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful-death actions. As set forth more specifically above, the claims are brought both individually and on behalf of TRAVIS SEGEBART, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil-rights law, and California law. These claims are also brought by Plaintiffs and the Nominal Defendant as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

---

[1] Nominal Defendant JENNIFER LORIN JOHNSON may be precluded by law or based on equitable principles from bringing a state law wrongful death claim and survival claims as the successor in interest in this action. As such, in order to preserve both of their rights to bring wrongful death claims and prosecute the Decedent's state and federal claims as the co-successors in interest, if Nominal Defendant JENNIFER LORIN JOHNSON lacks standing under California law or is otherwise disqualified, Co-Plaintiffs Sherry Reynolds and Lynn Segebart are also asserting these state law claims, at this time, in this Complaint.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    3

6.  Defendant COUNTY OF MADERA ("COUNTY") is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the Madera County Sheriff's Department ("MCSD") and Madera County Department of Corrections ("MCDC"),[2] which were consolidated and reunified in March of 2021, and is the employer of the individual, to-be-identified COUNTY Defendants, as well as certain DOE Defendants. Under its authority, the COUNTY operates the MCSD and MCDC, including the COUNTY's jail, at 14191 Road 28, in the County of Madera, which is the COUNTY facility where TRAVIS SEGEBART died.

7.  Defendant COUNTY, under its authority, operates the Madera County Jail and is, and was, responsible for ensuring the provision of emergency, medical, and mental-health services to all Madera County Jail detainees. Defendant COUNTY was and is responsible for ensuring that the basic human needs of individuals in its custody are met, and for ensuring that inmates are not at risk of serious harm, including by providing appropriate funding, oversight, and corrective action to ensure adequate conditions and medical care. Defendant COUNTY is also responsible for ensuring that jail policies and practices do not violate inmates' constitutional rights or put them at risk of serious harm, including by suicide, because they are a danger to themselves or are otherwise unable to properly care for themselves. Defendant COUNTY, by law, possesses the ultimate authority over the responsibility for the medical care, mental-health care, treatment, and physical safekeeping of all incarcerated persons at the Madera County Jail, including Decedent TRAVIS SEGEBART. Pursuant to California Government Code § 815.2, the COUNTY is vicariously liable for the state-law torts of its employees and agents, including any individual defendants herein that are named, as well as those to-be-identified individuals that will be named later.

8.  Defendant WELLPATH, LLC ("WELLPATH"), is a Delaware corporation headquartered in Nashville, Tennessee. Defendant WELLPATH, one of the nation's largest for-

---

[2] In this Complaint, the MCSD and MCDC may be used interchangeably, since, as of March of 2021 the two departments were consolidated and reunified. *See* https://www.maderacounty.com/government/corrections. MCSD means and includes MCDC.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                              4

profit correctional health-care providers, services about 394 county jails and community facilities, and more than 140 state and federal prisons in about 36 states.[3]

9. Defendant WELLPATH and their employees and medical directors for WELLPATH's services at the Madera County Jail were at all material times responsible for making and enforcing policies, procedures, supervision, and training related to the mental-health care of inmates at Defendant COUNTY's Madera County Jail, including, but not limited to: properly assessing the mental-health needs, properly classifying individuals, notifying COUNTY personnel of the unique medical needs, medical history, and prior suicidality of inmates for whom they have previously cared, including the Decedent (when he was housed at the County of Merced Jail), and providing appropriate observation and suicide prevention.

10. The true names and capacities of Defendants sued herein as DOES 1-50 ("DOE Defendants") are unknown to Plaintiffs[4] and Nominal Defendant, who, therefore, sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show their true names and capacities when the same are ascertained.

11. DOE Defendants 1-20 were and/or are to-be-identified employees/agents of the COUNTY and/or the MCSD, and at all material times acted within the course and scope of that employment.

---

[3] WELLPATH was created in 2018 from HIG Capital's merging CFMG with another correctional-healthcare company, Correct Care Solutions. From 2016 until 2018, COUNTY contracted with CFMG, owned by HIG Capital as part of its portfolio of correctional-medical group companies. In 2015, the *Sacramento Bee* reported that, over a 10-year period, jails contracting with CFMG had a rate of suicide and drug overdoses 50 percent higher than in non-CFMG serviced county jails in California. *See* https://www.sacbee.com/news/investigations/the-public-eye/article7249637.html.

[4] Due to the status of the Nominal Defendant in this Complaint as a de-facto "Plaintiff," the label "Plaintiffs" and "Nominal Defendant" will be interchangeable in this Complaint, in the interest of brevity and in order to obviate the need to list both in all applicable places in the Complaint. Every provision in which Plaintiffs are referenced shall also mean Nominal Defendant, unless otherwise stated, or if it is not implied based on the context. The inclusion of both Plaintiffs and Nominal Defendants in some portions, but not others, shall not be construed to imply that, where Nominal Defendants are not explicitly referenced, they are omitted.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                                                    5

12. DOE Defendants 21-40 were and/or are and/or may be to-be-identified employees and/or agents of Defendant WELLPATH, and at all material times acted within the course and scope of that employment.

13. DOE Defendants 41-50 were and/or are and/or may be to-be-identified employees and/or agents of any other to-be-identified municipality or business entity, and at all material times acted within the course and scope of that employment.

14. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Decedent, Plaintiffs, and Nominal Defendant.

15. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE Defendants.

16. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

17. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise, specifically alleged.

18. At all material times, each Defendant was jointly engaged in tortious activity, and was an integral participant in the events and violations of rights described herein, resulting in the deprivation of Decedent's, Plaintiffs', and Nominal Defendant's constitutional rights and other harm.

19. The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices, and procedures of the COUNTY, the MCSD, and WELLPATH.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                                    6

20. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

21. Plaintiffs timely and properly filed a government code claim, pursuant to California Government Code § 910 *et seq*., and this action is timely filed within all applicable statutes of limitation.

22. This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## **GENERAL ALLEGATIONS**

23. Plaintiffs and Nominal Defendant reallege each and every paragraph in this Complaint, as though fully set forth here.

24. The Decedent, TRAVIS SEGEBART, was a Navy Veteran.

25. On July 22, 2021, the Decedent was admitted to the Mercy Medical Center, in Merced, CA, after he was found hanging in his cell in the County of Merced Jail with a metal telephone cord, and was unresponsive. It was noted that the Decedent had a history that was significant for methamphetamine abuse. WELLPATH and its employees, at the time the Decedent was incarcerated in the COUNTY OF MADERA's jail (during which the incidents that gave rise to this action occurred) were on notice of this previous suicide attempt, since WELLPATH is and was at all material times also responsible contractually for providing medical care to the inmates in the County of Merced Jail.

26. On September 4, 2021, Decedent SEGEBART was placed on a Welfare and Institutions Code section 5150 hold for suicidal ideation, after he tied a shoelace around his neck and threatened to kill himself, prompting the Decedent's wife (Nominal Defendant JOHNSON) to call the police, who took him to the Madera Community Hospital (which, on information and belief, was a COUNTY hospital at the time the Decedent was there and all other relevant times), in order to put him on a suicide watch hold. There were visible ligature marks during his examination. On information and belief, the COUNTY and its employees as well as Defendant WELLPATH and its employees had actual or constructive knowledge and notice of this previous

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    7

suicide watch hold, prior to the Decedent's final incarceration. The COUNTY and its employees, as well as WELLPATH and its employees, knew or had reason to know of, this prior suicide attempt.

27. On or about November 28, 2021, Decedent SEGEBART was booked into the Madera County Jail as a pretrial detainee on various charges.[5]

28. During the intake process, the Decedent reported that he was an everyday user of amphetamine, and that he smoked and injected it – about half a gram daily.

29. Contrary to appropriate medical practices, it appears that no employee of WELLPATH, nor of the COUNTY, reviewed the Decedent's records from his prior incarcerations at the County of Merced's jail, where WELLPATH also has and at all material times had a contract to provide medical care to the individuals incarcerated, which included the Decedent. As noted in certain paragraphs that follow, the Decedent had engaged in serious self-harming behaviors on previous occasions in the County of Merced Jail, had attempted suicide, and had reported severe mental health issues and drug abuse issues that, on information and belief, put him at a substantially elevated risk of committing suicide. Specifically:

    a.  On April 22, 2016, SEGEBART had a severe anxiety attack in the County of Merced Jail, and was treated by a then-California Forensic Medical Group (Wellpath's former incarnation) employee, one Debbie Mandujano.

    b.  On April 26, 2021, at 10:27 a.m., in the County of Merced jail, SEGEBART was acting "agitated" with an "elevated mood", reporting that he needed to speak to his wife while sobbing and sliding down to the ground. He was then escorted to a cage to "relax" and possibly make a phone call. There, he was banging his head violently, dangerously, and uncontrollably on the metal cage, and was referred to

---

[5] On or about February 18, 2022, SEGEBART potentially entered into a plea on certain charges, and other charges were dismissed. This Complaint will be amended and clarified at a later date when further information regarding the disposition of these charges and the status of Decedent at the relevant times in question can be further ascertained and confirmed.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.        8

mental health. SEGEBART was then placed on suicide watch after he was banging his head on the cage and refused to stop.

    c. On 04/26/21, Terrie Vince, an LMFT employed by WELLPATH, noted the following regarding SEGEBART:

        i. An unclean appearance;

        ii. Pressured speech;

        iii. Mood was elevated;

        iv. Affect was tearful;

        v. Insight was poor;

        vi. Judgement was poor;

        vii. Behavior was impulsive;

        viii. Behavior was also uncooperative and evasive;

        ix. He had current Suicidal Ideations;

        x. His estimated self-harm/suicide risk level as of 04/26/21 was Intermediate.

    d. SEGEBART's behaviors of concern, as of 04/26/21, included: "Impulsive and unpredictable" and "Long history of methamphetamine use via IV – last used 2 days ago (day of his arrest) poor";

        i. He was noted to be impulsive and intoxicated or detoxing from alcohol/other drugs;

        ii. Risk factors included new legal issues – including new charges, a lengthy sentence, and a denial of parole; and,

        iii. He was given a safety smock on put on finger foods, as well as other suicide watch precautions, including staggered 15 minute checks;

        iv. Thus, SEGEBART was placed on suicide watch.

30. SEGEBART related to WELLPATH's staff, on April 27, 2021, that he was recently coming down from drug use when he was arrested, was unable to manage uncomfortable emotions, and had increased anxiety.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.          9

a. SEGEBART, on this date, identified to WELLPATH's staff sources of social support as: National suicide hotline number: 1-800-273-8255, Merced County BHRS CSU: (209) 381-6819, and Merced County BHRS outpatient: (209) 381-6800, as well as his church pastor;

b. SEGEBART was referred by Mental Health for an "SW evaluation".

31. On 05/06/21, while in the County of Merced Jail, SEGEBART related that, regarding his amphetamine use: "injects $20Qday for the past 10 years".

32. On 06/04/21, needle marks on SEGEBART's arm were noted – "pt has bruising and needle marks to AC area of right inner bicep; Pt states he has been shooting methamphetamine into his right arm the past two days."

33. On June 4, 2021, SEGEBART put WELLPATH and its staff on notice that he was not a reliable historian nor reporter of his suicidality nor suicidal ideation because he responded with a "No" to the question of whether he had attempted suicide in the past, when he had engaged in the uncontrolled head banging back in the same jail, on 04/26/21, and had been placed on suicide watch as a result.

34. Again, demonstrating to WELLPATH and its staff that he was not a reliable historian, on July 20, 2021, at 1:15 p.m., the Decedent inaccurately denied to Crystal Vera of Wellpath that he had any mental health history, including placement in a safety cell.

35. Yet, only hours later, at approximately 4:06 p.m., on July 20, 2021, SEGEBART was again referred to WELLPATH's staff because he attempted suicide; he was found hanging in a holding cell, had lost consciousness, and according to the notes by Crystal Vera of Wellpath, the duration was "4 MINUTES PER VIDEO FOUND HANGING 1429-1433".

a. The notes from Crystal Vera of Wellpath indicated: "Patient was found hanging with telephone cord wrapped around the neck twice."

b. An LVN and Crystal Vera were actually on their way to do a medical intake, when they noticed SEGEBART hanging.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    10

      c.  Various life-saving measures had to be administered to SEGEBART, and he was rushed to the emergency room at Mercy hospital, as noted above, in ¶ 28.

36. On October 5, 2021, during an intake or other interview with Wellpath personnel, the Decedent expressed that he had concerns about his ability to cope and emotionally manage stress; that he had wished he was dead or wished he could go to sleep and not wake up; that he had actual thoughts of killing himself; and, that he had these thoughts in the preceding three months.

      a.  An "MFT-Initial referral" was given from intake, and the notes indicated that SLAVEN had a history of a "SA via telephone cord last time in custody", i.e., the last time he had been in custody, he had made a suicide attempt with a telephone cord.

      b.  His mood was noted as "tearful" and SEGEBART reported his prior attempt to commit suicide by hanging himself with at telephone cord.

37. On October 15, 2021, during an intake or other interview with WELLPATH personnel, the Decedent denied any amphetamine use, and denied any history of amphetamine withdrawal, thus demonstrating yet *again* that he was not a reliable historian nor a reliable reporter of his conditions, and, thus, that his responses needed to be cross-referenced with the records because he clearly did have a history of amphetamine use, as shown by the notations from the May 6, 2021 intake, stating: "injects $20Qday for the past 10 years".

38. On October 17, 2021, a note by WELLPATH employee Sarah Peara indicates that the Decedent had previous suicide attempts, including, in July of 2021, an attempt by hanging himself in jail with a phone cord. The note says: "In July 2021 pt hung self in jail with phone cord. Pt was sent to hospital and required narcan."

39. In sum, for good reason, the Decedent, SEGEBART, was designated by Wellpath as of 2021 – **prior to his eventual suicide in the COUNTY OF MADERA jail** – as an inmate/patient with "Suicide History, Mental-Health-Special Needs."

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.        11

40. Nevertheless, SEGEBART was not properly assessed and classified by WELLPATH's staff, nor by COUNTY's staff, at the COUNTY OF MADERA Jail.

41. He was housed in Module A, Dorm 7, with other inmates, and had access to ligature devices (such as a bed sheet) and had access to a bathroom in a common area where he remained for a substantial period of time, unsupervised, because the area was not being properly supervised and monitored by the COUNTY's Correctional Officers, thereby enabling the Decedent to enter the restroom with a white bed sheet and remain there, undetected, for a period of time sufficient to attach the bed sheet to the hydraulic part of the hinge that was attached to the top of the door, and then place the sheet around his neck, and hang himself. At the time that the Decedent was in the bathroom where he committed suicide, the inmates in that area (including SEGEBART) were, on information and belief, already supposed to be back in their cells.

42. On information and belief, the COUNTY's employees had actual or constructive notice that the Decedent may attempt to commit suicide, thus giving rise to a need to appropriately supervise and protect the Decedent.

43. On information and belief, the Decedent was never properly and adequately assessed and classified by a qualified mental health professional in the COUNTY OF MADERA Jail to assess his suicidality and risk of self-harm.

44. On February 25, 2022, at approximately 9:20 p.m., the Decedent was found by COUNTY Correctional Officers in a common area bathroom; he was found hanging by a piece of fabric (bed sheet) – a ligature device to which the Defendants' allowed SEGEBART to gain access – which had been fashioned into a noose. The Decedent was suspended off the ground; he was hanging by the fabric around his neck, which was tied to the inside door of the bathroom. Efforts to revive him failed, and he was later pronounced deceased.

45. Based on the totality of circumstances and the totality of risk factors present, at the time he committed suicide and was allowed access to be unsupervised in a locked bathroom with access to a ligature device, TRAVIS SEGEBART was at an elevated risk of suicide, and

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    12

1  reasonable precautions needed to be taken, in view of the significant risk that TRAVIS
2  SEGEBART posed of committing suicide.

3     46. The COUNTY's employee, Tou Vang, found the Decedent while performing his rounds,
4  and had never seen –as a result of his and other COUNTY employees' negligence – the Decedent
5  enter the bathroom, where he was able to commit suicide without being interrupted or stopped.

6     47. At all material times, and alternatively, the actions and omissions of each Defendant were
7  intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately
8  indifferent to Decedent's, Plaintiffs', and Nominal Defendant's rights, and done with actual
9  malice, recklessness, gross negligence, deliberate indifference, negligence, and/or were
10 otherwise objectively unreasonable.

11    48. As a direct and proximate result of each Defendant's acts and/or omissions, as set forth
12 above, Plaintiffs and Nominal Defendant sustained the following injuries and damages, past and
13 future, including, but not limited to:

14         a.     Wrongful death of TRAVIS SEGEBART, pursuant to California Code of
15              Civil Procedure § 377.60 *et seq.*;

16         b.     Hospital and medical expenses, pursuant to California Code of Civil
17              Procedure § 377.20 *et seq.*;

18         c.     Coroner's fees, funeral, and burial expenses, pursuant to California Code
              of Civil Procedure § 377.20 *et seq.*;

19         d.     Loss of support and familial relationships, including loss of love,
20              companionship, comfort, affection, society, services, solace, and moral
              support;

21         e.     TRAVIS SEGEBART's loss of life, including loss of enjoyment of his
22              life, pursuant to federal civil rights law;

23         f.     TRAVIS SEGEBART's pre-death, conscious pain and suffering, pursuant
24              to California law and federal civil rights law;

25         g.     All Plaintiffs' loss of their relationship with the Decedent, including pain
26              and suffering and the attendant emotional distress, pursuant to federal civil
              rights law (based on individual § 1983 claims for loss of familial
27              association);

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.         13

h.   All damages, penalties, costs, and attorneys' fees recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52 and 52.1 *et seq.*; California Code of Civil Procedure § 1021.5; and as otherwise allowed under California and United States statutes, codes, and common law.

49. The conduct of the to-be-identified individual Defendants, including DOES 1-50, was malicious, wanton, oppressive, and in reckless disregard of the rights and safety of Decedent, Plaintiffs, Nominal Defendant, any to-be-identified Plaintiffs, and the public. Plaintiffs, Nominal Defendant, and any to-be-identified Plaintiffs are, therefore, entitled to an award of punitive damages against the to-be-identified Defendants and DOES 1-50.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)
### PLAINTIFFS AND NOMINAL DEFENDANT AGAINST DEFENDANTS DOES 1-50

50. Plaintiffs and Nominal Defendants re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

51. By the actions and omissions described above, Defendants DOES 1–50, acting under the color of state law in their individual capacities, deprived TRAVIS SEGEBART as a pretrial detainee of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting him, or through their deliberate indifference, allowing others to subject him, to delay and denial of access to medical or mental health care for a serious, but treatable, medical or mental health condition.

52. The listed Defendants knew that TRAVIS SEGEBART's medical condition was serious, but treatable, and knew or must have known that he required access and delivery to urgently needed medical/mental health care; Defendants further had a duty to provide TRAVIS SEGEBART reasonable security and safe, appropriate housing and monitoring to accommodate his mental health condition.

53. The listed Defendants ignored, delayed, or denied to TRAVIS SEGEBART urgently needed medical and psychiatric care and treatment. As a result of the Defendants' deliberate indifference to both TRAVIS SEGEBART's need for medical care and treatment and his mental

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    14

condition, Plaintiffs and Nominal Defendants suffered damages and deprivation of constitutional rights, as described herein.

54. By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiffs, Nominal Defendants, and Decedent of the following well-settled constitutional rights that are protected by the First and Fourteenth Amendments to the U.S. Constitution:

      a.   The right to be free from deliberate indifference to TRAVIS SEGEBART's serious medical needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourteenth Amendment;

      b.   The right to be free from wrongful government interference with familial relationships and Plaintiffs', Nominal Defendant's, and Decedent's right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

55. The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

56. Defendants subjected Plaintiffs, Nominal Defendant, and Decedent to their wrongful conduct, depriving Plaintiffs, Nominal Defendant, and Decedent of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and Nominal Defendant (individually and on behalf of TRAVIS SEGEBART) and others would be violated by their acts and/or omissions.

57. As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiffs, Nominal Defendant, and Decedent sustained injuries and damages, as set forth above, in ¶ 48. Plaintiffs and Nominal Defendant are, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

58. In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiffs, Nominal Defendant, and Decedent, and by reason thereof, Plaintiffs and Nominal Defendant are entitled to punitive damages and penalties

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.          15

allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 et seq, and other state and federal law against these individual Defendants; no punitive damages are sought directly against the COUNTY.

59. Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

### SECOND CAUSE OF ACTION
#### (42 U.S.C. § 1983 – *Monell* and Supervisory Liability)
**PLAINTIFFS AND NOMINAL DEFENDANT AGAINST DEFENDANTS COUNTY OF MADERA, WELLPATH, DOES 1-5 and DOES 21-25**

60. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth herein.

61. As supervisors, DOES 1-5 and DOES 21-25 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of TRAVIS SEGEBART. Each of these supervising Defendants either directed her or his subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Decedent of rights, OR knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that she or he must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedents' rights.

62. On information and belief, no adequate Suicide Risk Assessment tool ("SRA") was implemented in COUNTY's jail prior to the Decedent's suicide, which was needed by COUNTY and WELLPATH to both initiate suicide precautions in COUNTY's jail and discharge inmates from suicide precautions, but it either was never promulgated, never implemented, has not been

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                                    16

1    enforced, is inadequate, or was not followed with respect to Decedent.

2        63. Prior to Decedent's incarceration, on information and belief, the COUNTY,

3    WELLPATH, and their policymakers and administrators were aware of the need to have a policy

4    requiring an appropriate assessment of an inmates suicide risk, which included their medical

5    history – including the history from prior incarcerations both at the same facility or at other

6    facility where WELLPATH was also responsible for medical care, including the County of

7    Merced Jail, where the Decedent had previously been incarcerated and had attempted suicide,

8    been put on suicide watch, and also engaged in self-harm behaviors, for jail medical staff to

9    perform an appropriate assessment before the scheduled release of an inmate on suicide

10   precautions, for inmates discharged from suicide precautions to get an appropriate treatment plan

11   and follow-up assessments by staff, and that COUNTY and WELLPATH staff needed to be

12   trained on the Suicide Risk Assessment form and development of treatment plans, with the

13   training to be developed for new and existing COUNTY and WELLPATH employees, along

14   with regular refresher training. Additionally, the COUNTY, WELLPATH, and their respective

15   policymakers and administrators were aware that this training needed to include avoiding

16   negative attitudes, the impact of correctional environments on suicidal behavior, predisposing

17   factors, high-risk time periods, warning signs, and a suicide prevention policy, inter alia.

18       64. On information and belief, despite this knowledge that the COUNTY and WELLPATH,

19   including the named Defendants as well as their policymakers and administrators, had at least as

20   of prior to the Decedent's incarceration, and in fact had much earlier, they failed to implement

21   and/or enforce and/or properly execute drastically needed suicide prevention policies, which

22   failure was a moving force and proximate cause of the deprivations of Plaintiffs', Nominal

23   Defendant's, and Decedent's clearly established and well-settled constitutional rights, in

24   violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

25       65. Plaintiffs allege, upon information and belief, the unconstitutional actions and/or

26   omissions of the individually named COUNTY and WELLPATH Defendants were pursuant to

27   the following customs, policies, practices and/or procedures of the COUNTY and WELLPATH,

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                              17

stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the COUNTY and its agencies, as well as WELLPATH:

a. To deny inmates at the COUNTY'S jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including, but not limited to, by failing to require that all medical/psychiatric staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law;

b. To fail to implement and/or enforce and/or properly execute drastically needed suicide prevention policies, which COUNTY and WELLPATH officials knew and/or had reason to know were needed;

c. To fail to ensure that suicide precautions are not lifted without a proper assessment and without implementing reasonable prevention precautions, as well as formulating an executing a safety plan for the individual;

d. To fail to ensure an individualized treatment plan is formulated and followed before suicide prevention precautions are lifted;

e. To fail to ensure an individualized safety plan is formulated, documented, and followed prior to the lifting of suicide safety precautions;

f. To fail to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

g. To allow, encourage, and require unlicensed, inadequately trained, and inadequately supervised medical staff to make decisions to place jail inmates on, and remove inmates from, suicide watch in direct violation of applicable law and standards, including permitting unlicensed and/or untrained medical staff to remove severely mentally ill inmates from suicide watch without a reasonable, appropriate, and lawful basis for doing so;

h. To fail to institute proper procedures and training to coordinate inmate assessment, placement, suicide watch decisions, transfers psychiatric facilities, and care with the COUNTY and WELLPATH medical staff, jail physicians, jail psychiatrists, court, and/or jail corrections staff, where there was an obvious need for such to prevent the type of tragedy that occurred in this case;

i. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for mentally ill and/or emotionally disturbed inmates at the COUNTY Jail, including alternatives to

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    18

placing such ill and disturbed inmates in need of treatment in solitary confinement or segregation cells that are intended and used to punish inmates, with the obvious consequence that the mental health needs of such inmates remain unaddressed and are in fact aggravated and increased by such punitive treatment;

    j.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (i) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs, Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

66. In the alternative, upon information and belief, Defendant COUNTY and/or WELLPATH may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

67. The above-described customs, policies, practices, and/or procedures of the COUNTY and WELLPATH were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above the First Cause of Action.

68. Defendant COUNTY and WELLPATH are also liable for the violations of Plaintiffs' and Decedent's rights by their final policy makers, as described above. (*See*, Ninth Circuit Model Civil Jury Instruction 9.6).

69. On information and belief, the COUNTY and WELLPATH both conducted an investigation and review of this matter leading to the death of TRAVIS SEGEBART. The unconstitutional actions and/or omissions of the individually named Defendants, DOES 1-40, and other COUNTY and WELLPATH personnel, as described above, were approved, tolerated, and/or ratified by policy making officers for the COUNTY and WELLPATH. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within the COUNTY, including the COUNTY agencies listed above, and that such policymakers have direct knowledge of the fact that TRAVIS SEGEBART was

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.       19

unlawfully denied necessary care for his serious medical needs due to their and their subordinates' misconduct and violations of Decedents' rights. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and WELLPATH, including the various COUNTY agencies listed above, have approved of the individually named Defendants' and DOES 1–30s' conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of TRAVIS SEGEBART. By so doing, the authorized policymakers within the COUNTY and WELLPATH have shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

70. The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of individual Defendants were a moving force and/or a proximate cause of the deprivations of Plaintiffs', Nominal Defendant's, and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

71. As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, and/or procedures of Defendants COUNTY OF MADERA, WELLPATH, FITHIAN, DOES 1-5, and DOES 21-25, or the lack or inadequacy thereof, Plaintiffs and Nominal Defendant sustained serious and permanent injuries and damages, and are entitled to damages, penalties, costs, and attorneys' fees, as set forth above, in ¶ 48, and punitive damages against the individual Defendants, and DOES 1-5 and DOES 26-30 in their individual capacities.

//

//

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    20

### THIRD CAUSE OF ACTION
### (VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 (b) – BANE ACT)
### <u>PLAINTIFFS AND NOMINAL DEFENDANT AGAINST DEFENDANTS COUNTY and DOES 1-50</u>

72. Plaintiffs and Nominal Defendant re-allege and incorporate by reference each and every paragraph contained in this complaint, as if fully set forth here.

73. By their acts, omissions, customs, and policies, each Defendant, acting in concert/conspiracy, as described above, interfered with, and/or attempted to interfere with, by acting with a reckless disregard for Plaintiffs', Nominal Defendant's, and Decedent's rights, and violated Plaintiffs', Nominal Defendant's, and Decedent's rights under California Civil Code § 52.1, by violating the following clearly established rights under the United States Constitution and the California Constitution:

    a. Decedent's right to be free from an unreasonable ongoing seizure as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

    b. Decedent's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

    c. Plaintiffs', Nominal Defendant's, and Decedent's right to be free from wrongful government interference with familial relationships and Plaintiffs', Nominal Defendant's, and to-be-identified Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments;

    d. Plaintiffs', Nominal Defendant's, and Decedent's right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

    e. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and,

    f. Decedent's right to medical care, as required by California Government Code § 845.6.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.        21

74. Alternatively, or concurrently, the threat, intimidation, and coercion described herein was neither necessary nor inherent to Defendants' violation of Plaintiff's rights, nor to any legitimate law enforcement activity.

75. Further, all of Defendants' violations of duties and rights and coercive conduct, described herein, were volitional acts; none were accidental or merely negligent.

76. To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were suffered by Plaintiffs and/or Nominal Defendant and/or to-be-identified Plaintiffs, it is asserted as a direct, wrongful death claim. To the extent the violations were done to both Decedent and Plaintiffs, it is asserted as both a survival and wrongful death claim.

77. The COUNTY is liable under California Government Code § 815.2 for injury proximately caused by an act or omission of an employee, committed within the course and scope of the employees' employment.

78. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and law, Plaintiffs sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above, in ¶ 48, and to punitive damages against the individual Defendants and DOES 1-50 in their individual capacities, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, including costs, attorneys' fees, three times actual damages, and civil penalties.

**FOURTH CAUSE OF ACTION**
**(NEGLIGENCE)**
**PLAINTIFFS AND NOMINAL DEFENDANT AGAINST DEFENDANTS COUNTY**
**and DOES 1-50**

79. Plaintiffs and Nominal Defendant re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

80. At all material times, Defendants COUNTY and DOES 1-50 owed TRAVIS SEGEBART the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    22

81. At all material times, each Defendant owed TRAVIS SEGEBART the duty to act with reasonable care.

82. These general duties of reasonable care and due care owed to TRAVIS SEGEBART by all Defendants include, but were not limited, to the following specific obligations:

    a. To provide, or have provided, prompt and timely access to appropriate treatment and safety from the grave danger he posed to himself;

    b. To provide safe and appropriate jail custody for TRAVIS SEGEBART, including reasonable classification, monitoring, and housing, including placing him on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for suicide;

    c. To summon necessary and appropriate medical care for TRAVIS SEGEBART;

    d. To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for the Decedent's status as a mentally ill and/or emotionally disturbed person;

    e. To use generally accepted custodial health care and suicide prevention procedures that are reasonable and appropriate for the Decedent's status as a mentally ill and/or emotionally disturbed person;

    f. To implement and/or enforce and/or properly execute drastically needed suicide prevention policies, which COUNTY officials knew and/or had reason to know were needed;

    g. To properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, and to not remove an inmate from a 5150 hold without a proper suicide risk assessment, as well as considering the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

    h. To refrain from abusing their authority granted to them by law; and,

    i. To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

83. By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care, which foreseeably resulted in the suffering of

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.         23

1  damages by TRAVIS SEGEBART, Plaintiffs, Nominal Defendant, and any to-be-identified
2  Plaintiffs.

3      84. Defendants, through their acts and omissions, breached the aforementioned duties owed
4  to TRAVIS SEGEBART, Plaintiffs, and Nominal Defendant.

5      85. Defendant COUNTY is vicariously liable pursuant to California Government Code
6  section 815.2.

7      86. As a proximate result of Defendants' negligence, Plaintiffs and Nominal Defendant
8  sustained injuries and damages, and against each listed and to-be-identified Defendant in this
9  Cause of Action is entitled to the relief described above, in ¶ 48. Plaintiffs and Nominal
10 Defendant also seek punitive damages against such individual Defendants in their individual
11 capacities. Plaintiffs and Nominal Defendant do not seek punitive damages against the
12 COUNTY.

13                          **PRAYER FOR RELIEF**

14      WHEREFORE, Plaintiffs and Nominal Defendant respectfully request the following
15 relief against each and every Defendant herein, jointly and severally:

16      a.    Compensatory damages in an amount according to proof and which is fair,
             just, and reasonable;
17

18      b.    Punitive damages against the individual Defendants, under 42 U.S.C. §
             1983 and California law, in an amount according to proof and which is
19           fair, just, and reasonable (punitive damages are not sought against
             Defendant COUNTY);
20

21      c.    Attorneys' fees and costs of suit under 42 U.S.C. § 1988;

22      d.    Attorneys' fees and costs of suit under California Civil Code §§ 52 (b)(3)
             and 52.1(h);
23

24      e.    All other damages, penalties, costs, interest, and attorneys' fees as allowed
             by 42 U.S.C. §§ 1983 and 1988, California Code of Civil Procedure §
25           1021.5, California Civil Code §§ 52 et seq. and 52.1, and as otherwise
             may be allowed by California and/or federal law;

26      f.    Injunctive and declaratory relief, including, but not limited to, the
27           following:

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.                    24

1

        i.      An order prohibiting Defendant COUNTY and its law-
enforcement officers from engaging in the unconstitutional

2

customs, policies, practices, training, and supervision as may be
determined and/or adjudged by this case; and,

3

4

      g.     For such other and further relief, according to proof, as this Court may
deem appropriate, just, or proper.

5

6

Dated: April 5, 2023                **LAW OFFICE OF SANJAY S. SCHMIDT**

7

**-and-**
**HELM LAW OFFICE, PC**

8

9

*/s/ Sanjay S. Schmidt*_____
SANJAY S. SCHMIDT

10

Attorneys for Plaintiffs

11

**JURY TRIAL DEMAND**

12

    Plaintiffs and Nominal Defendants hereby respectfully demand a jury trial, pursuant to

13

Federal Rule of Civil Procedure 38, for all claims for which a jury is permitted.

14

15

Dated: April 5, 2023                **LAW OFFICE OF SANJAY S. SCHMIDT**

16

**-and-**
**HELM LAW OFFICE, PC**

17

18

*/s/ Sanjay S. Schmidt*_____
SANJAY S. SCHMIDT

19

Attorney for Plaintiffs

20

21

22

23

24

25

26

27

Complaint for Damages and Demand for Jury Trial
*Reynolds, et al. v. County of Madera, et al.*
Case No.            25